IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

DANNY TOWNSEND
Plaintiff

v. CAUSE NO.: 3:26-CV-354-KHJ-BWR

J. DEWAYNE THOMAS, et al
Defendants

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT J. DEWAYNE THOMAS' MOTION TO DISMISS**

**COMES NOW** Plaintiff Danny Townsend, by and through his attorney of record, the honorable Ishmael Muhammad, and respectfully submits this Memorandum of Authorities in Opposition to Defendant J. Dewayne Thomas's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion should be denied.

## I. INTRODUCTION

Defendant J. Dewayne Thomas asks this Court to do something Rule 12(b)(6) does not permit: accept Defendant's characterization of the Complaint rather than the facts actually pleaded in it.

Thomas's Motion attempts to reduce this action to a collection of adverse judicial rulings issued by a former chancery judge before he recused himself in November 2021 but that is not what Plaintiff alleges.

Plaintiff alleges a years-long course of coordinated conduct in which Thomas allegedly moved between the roles of judge, former attorney, personal adviser, advocate, intermediary, and participant in a broader effort to deprive Plaintiff of his rights as the surviving spouse and possessory owner of his marital home. The Complaint expressly distinguishes between judicial and nonjudicial conduct. It alleges ex parte communications, continued attorney-client and personal relationships with persons having interests in litigation before Thomas, direction and influence of litigation strategy, coordination with attorneys and private parties, interference with Plaintiff's access to hearings and relief, manipulation and coordination concerning estate and insurance matters, and later coordination concerning Plaintiff's homestead and tax status. See Compl. ¶¶ 30-39.

Most importantly for purposes of this Motion, the Complaint does not allege that Thomas's involvement ended when he recused himself on November 16, 2021.

The Complaint alleges that after Thomas's recusal, the same course of conduct continued through other actors, including Judge Tametrice Hodges, with Thomas continuing to act in the interests of his alleged former clients. It alleges that Hodges assumed control of the estate matter and thereafter acted against Plaintiff "in the interest of Defendant Thomas and Defendant Thomas's client(s)." Compl. ¶¶ 305-307. It further alleges that Thomas participated in 2023 with the Hinds County tax officials in an effort to characterize Plaintiff's home as vacant or abandoned, undermine his homestead protection, and facilitate the loss of his

property. Compl. ¶ 308. Finally, the Complaint expressly alleges that the conspiracy continued through the forced sale of Plaintiff's homestead, which it identifies as the most recent connected action. Compl. ¶ 38.

Those allegations matter for two independent reasons.

First, they defeat Defendant's attempt to establish on the face of the Complaint that every claim accrued in 2021 or February 2022. The Complaint alleges additional conduct attributable to Thomas after both dates.

Second, they demonstrate why Thomas's judicial-immunity argument cannot be resolved by simply labeling every allegation "judicial." The Supreme Court and Fifth Circuit require a functional, act-by-act inquiry. Absolute judicial immunity protects judicial functions; it does not automatically immunize every act performed by a person who happens to hold or previously have held judicial office. *See generally, Forrester v. White*, 484 U.S. 219 (1988); *Mireles v. Waco*, 502 U.S. 9 (1991); *Jones v. King*, 148 F.4th 296, 300-01 (5th Cir. 2025).

Plaintiff does not contend that every ruling Thomas entered was nonjudicial or that judicial immunity disappears because Plaintiff alleges improper motive, bad faith, racial animus, or conspiracy. Plaintiff recognizes that proposition of law. The issue is different: whether the Complaint, construed in Plaintiff's favor, alleges conduct that cannot be characterized solely as adjudication. It does.

At this stage, the Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. The Court should not resolve

factual disputes concerning what Thomas actually did, whether his communications were private or judicial, whether he continued coordinating with persons who had interests in matters before him, whether the alleged 2023 conduct occurred, or whether the later conduct was part of the same conspiracy. Those are factual matters.

The Motion should therefore be denied.

## II. FACTUAL BACKGROUND RELEVANT TO DEFENDANT THOMAS

### A. The Complaint alleges that Thomas had a preexisting attorney-client and personal relationship with members of the Townsend family.

Plaintiff's allegations concerning Thomas begin before Thomas became involved as a judicial officer in the disputes concerning Plaintiff's marital home.

Thomas previously represented Althela Townsend, then Althela Green, in connection with the estate of her deceased husband, Louis Green. He also represented her daughter, Keiona Green, including in connection with a guardianship beginning when Keiona was a minor. Compl. ¶¶ 42-45.

Following Althela's death in July 2017, members of her family contacted Thomas as both a family friend and attorney. Plaintiff alleges that Thomas was informed of the family's desire to obtain the marital home and that the family regarded Plaintiff as having no right to the property because Althela had allegedly intended for her children to have it.

The Complaint further alleges, on information and belief, that Thomas advised the family concerning the legal strategy to pursue, including obtaining counsel and initiating an heirship proceeding.

The significance of these allegations is not that prior representation automatically creates liability or automatically defeats judicial immunity. It does not.

The significance is that Plaintiff alleges Thomas entered the subsequent litigation with an existing personal and professional relationship with persons who had a direct interest in the outcome of the litigation.

B. The Complaint alleges that Thomas continued assisting those interests after becoming the presiding judge.

The Complaint alleges that an heirship proceeding was assigned to Thomas and that Thomas did not immediately recuse himself despite the preexisting relationships. The Complaint even alleges that the preexisting relationship was a continuing one, supported by the reasonable inferences that can be made in favor of the Plaintiff from revealed facts.

The Complaint further alleges that Thomas continued communicating with and assisting the persons whose interests were adverse to Plaintiff while exercising judicial authority over Plaintiff's claims.

Plaintiff alleges, for example, that the case proceeded through a series of events in which hearings were scheduled, transportation was arranged for Plaintiff

while incarcerated, and then a hearing was cancelled after transportation had been approved. Compl. ¶¶ 64-67.

Plaintiff does not contend that the mere scheduling or cancellation of a hearing is, standing alone, a nonjudicial act. Rather, the surrounding allegations support Plaintiff's broader allegation that the judicial proceedings were being coordinated with private interests outside the ordinary adjudicative process.

That distinction is important because judicial immunity is functional, not status-based.

C. The Complaint alleges that Thomas's April 2018 conduct involved more than adjudication.

Following proceedings concerning heirship and Plaintiff's homestead rights, Thomas entered orders recognizing Plaintiff's rights in the marital residence.

The Complaint alleges, however, that the April 2018 events involved private communications and an alleged arrangement between Thomas and Plaintiff's counsel concerning the disposition of Plaintiff's claims.

According to the Complaint, Thomas allegedly participated in a private arrangement under which Plaintiff's claims would be resolved in exchange for other concessions, without Plaintiff's knowledge or authorization. Plaintiff further alleges that this arrangement resulted in his wife's and his personal property being removed from the home and that Plaintiff returned to find the home substantially emptied.

The Complaint alleges that Plaintiff's attorney later told him that he could not assist because an arrangement had already been made with Thomas.

These allegations are not merely a challenge to the substance of a judicial order.

They allege private coordination concerning the disposition of a litigant's property and legal claims.

Whether Plaintiff can ultimately prove those allegations is a merits question. Whether those allegations are sufficiently pleaded is the question before the Court now.

D. The Complaint alleges continuing conduct involving protective orders, the fire, insurance proceeds, and the estate.

The Complaint alleges that Thomas thereafter remained involved in disputes concerning Plaintiff and the persons Plaintiff contends were Thomas's former clients without actual jurisdiction.

Plaintiff alleges that Thomas exercised influence over protective-order proceedings and sought to maintain control over matters involving Plaintiff and those persons when Thomas' authority over the cases and matters was neither requested, lawfully obtained, or otherwise properly authorized, leaving Thomas without any legal jurisdiction.

The Complaint further alleges that after a fire damaged Plaintiff's home, Plaintiff pursued insurance and contempt-related relief. Plaintiff alleges that his

attorney brought the contempt matters before Thomas but not the insurance matters. And that despite Plaintiff's desire and actions taken to litigate the insurance claims elsewhere, that Thomas allegedly coordinated with counsel in a manner designed to bring the insurance matters under his authority and deny Plaintiff relief.

The Complaint specifically alleges that Thomas failed to provide a hearing or ruling on Plaintiff's contempt motion and characterizes the alleged failure as part of Thomas's effort to protect persons with whom he had a prior relationship. Compl. ¶¶ 158-162.

The Complaint then alleges that Plaintiff's later effort to open an estate became another mechanism through which his property and insurance-related claims were brought under Thomas's control.

It alleges that Thomas directed or coordinated with Plaintiff's attorneys concerning the estate, the mortgage reimbursement proceeds, insurance proceeds, and other property claims, and that those matters were brought into the estate so that Thomas could adjudicate them in circumstances favorable to the persons with whom he had a prior relationship. Compl. ¶¶ 163-175 and following.

Plaintiff further alleges that between 2020 and 2021 Thomas participated in decisions concerning insurance proceeds, attorney payments, estate administration, the identity and conduct of the estate administrator, and the use of the property.

Again, Plaintiff does not ask this Court to determine at this stage that every order entered during those proceedings was nonjudicial.

Plaintiff asks the Court to recognize that the Complaint alleges a combination of judicial acts and alleged conduct outside the adjudicative function.

E. Thomas recused himself only after Plaintiff discovered the alleged conflict and moved for recusal.

On November 11, 2021, Plaintiff moved to recuse Thomas.

Thomas recused himself on November 16, 2021.

The timing is significant because Defendant's limitations argument effectively treats the recusal as the endpoint of Thomas's involvement. The Complaint does not.

F. The Complaint expressly alleges post-recusal conduct involving Thomas and Judge Hodges and the Hinds County Chancery political officials and staff.

After Thomas's recusal, Judge Tametrice Hodges ultimately assumed control of the estate litigation.

The Complaint alleges that, "[f]rom the start of her adjudicating the Estate case," Hodges operated against Plaintiff "in the interest of Defendant Thomas and Defendant Thomas's client(s)." Compl. ¶ 306.

The Complaint alleges that Hodges entered rulings adverse to Plaintiff, including rulings concerning his possession of the marital home and his alleged abandonment of the property. Compl. ¶ 307.

More importantly for purposes of Thomas's Motion, the Complaint does not allege that these later events occurred independently of Thomas. It alleges that Thomas remained connected to the effort.

The Complaint alleges that the administratrix and Thomas continued to communicate and collude ex parte concerning Plaintiff's property and the interests of Thomas's alleged clients. Compl. ¶ 297.

It alleges that Thomas and other officials participated in a continuing plan concerning Plaintiff's homestead and the tax treatment of his property.

Most significantly, Paragraph 308 alleges: "Defendant Assessor, Defendant Collector, Defendant Clerk and Defendant Thomas also colluded in 2023 to cite the Plaintiff’s property as being vacant and abandoned in order to deny him homestead protection and force a sale of his property.” Compl. ¶ 308.

That allegation is critical. It places an alleged act by Thomas in 2023—after his recusal, after November 2021, and after the February 2022 date upon which Thomas now attempts to anchor Plaintiff's claims. It also alleges conduct involving tax-administration officials and the characterization of Plaintiff's property as vacant or abandoned—not simply the issuance of a judicial ruling.

G. The Complaint alleges that the conspiracy culminated in the forced sale of Plaintiff's homestead.

The Complaint expressly alleges that "[t]he conspiracy to harm Nadir continues to this day" and that the most recent connected action was "the forced sale of his homestead." Compl. ¶ 38.

Plaintiff does not contend that Thomas personally entered the later sale order after his recusal. The Complaint does not need to make that allegation to plead the theory asserted against Thomas. Rather, the Complaint alleges that Thomas's conduct formed part of a continuing coordinated effort, that the effort continued after his recusal through other actors including Judge Hodges, and that the later judicial and administrative actions culminated in the forced sale.

The distinction matters.

Plaintiff is not asking this Court to review or reverse the state-court sale order. The Plaintiff admits that is a judicial act. Plaintiff does allege, however, that the judicial act is the result of a conspiracy between Thomas and Hodges to serve the interests of Thomas' alleged clients against the Plaintiff's interests and the culmination of a broader constitutional deprivation and coordinated course of conduct that included alleged conduct by Thomas well after 2021.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

At this stage, the Court must accept well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. The Court does not determine whether Plaintiff ultimately can prove the allegations. Nor does the Court resolve competing factual characterizations offered by the defendant.

This principle is particularly important where a defendant asserts an affirmative statute-of-limitations defense.

But a limitations defense ordinarily is not resolved under Rule 12(b)(6) unless the complaint itself establishes the defense on its face. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) and *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014), both quoting *Jones v. ALCOA*, Inc., 339 F.3d 359, 366 (5th Cir.2003).

Likewise, where the pleaded facts do not conclusively establish that all claims are time-barred, dismissal is improper. *See Blimline v. Thirty Unknown Employees of the Securities and Exchange Commission*, 757 F. App'x 299, 303 (5th Cir. 2018).

## IV. DEFENDANT'S STATUTE-OF-LIMITATIONS DEFENSE CANNOT BE RESOLVED ON THE FACE OF THE COMPLAINT

### <u>A. Defendant improperly selects November 2021 and February 2022 as universal accrual dates.</u>

Thomas's limitations argument depends upon a factual premise: that all actionable conduct attributable to Thomas occurred before November 2021 and

that Plaintiff necessarily knew the factual basis for all of his present claims by February 2022. The Complaint does not establish either proposition.

To the contrary, the Complaint expressly alleges post-recusal conduct involving Thomas. The most direct example is Paragraph 308, which alleges that Thomas, together with the Assessor, Collector, and Clerk, "colluded in 2023" concerning the designation of Plaintiff's property as vacant or abandoned and the effort to deny homestead protection and force a sale.

The Court cannot disregard that allegation for purposes of a Rule 12(b)(6) motion merely because Thomas would prefer the Court to treat his November 2021 recusal as the endpoint of his involvement. The Complaint alleges otherwise.

<u>B. The Complaint alleges an actual post-recusal Thomas act, not merely a continuing injury from an old act.</u>

This distinction is important. Plaintiff does not rely solely on the proposition that an injury caused in 2018 remained painful or that the consequences of an old order continued into 2025. Instead, Plaintiff alleges additional acts by Thomas after 2021.

Paragraph 297 alleges continuing ex parte coordination between Thomas and the administratrix concerning Plaintiff's property and Thomas's alleged clients.

Paragraphs 305-307 allege that after Judge Hodges assumed the estate matter, she acted in the interest of Thomas and his alleged clients.

Paragraph 308 expressly alleges Thomas's participation in 2023 with the Assessor, Collector, and Clerk to undermine Plaintiff's homestead protection and facilitate a sale.

Those allegations present a materially different limitations question from one in which a plaintiff merely complains of the continuing effects of a completed 2018 act.

The Fifth Circuit recognizes that the continuing-violation doctrine is a federal accrual doctrine and that it can apply where a plaintiff alleges a series of related acts, one or more of which falls within the limitations period. *Heath v. Board of Supervisors for Southern University & Agricultural & Mechanical College*, 850 F.3d 731, 739–40 (5th Cir. 2017); *Montgomery v. Louisiana ex rel. La. Dep't of Pub. Safety & Corr.*, 46 F. App'x 732, 2002 WL 1973820, at 2 (5th Cir. Aug. 2, 2002).

Plaintiff recognizes that the doctrine is not limitless. He therefore does not ask the Court to hold that every historical act is automatically timely merely because Plaintiff's injury continued.

Instead, Plaintiff alleges discrete later conduct by Thomas that was part of the same alleged course of conduct and that independently injured Plaintiff's protected property and constitutional interests.

That is sufficient, at minimum, to prevent dismissal on the face of the Complaint.

C. The Complaint alleges later conduct involving different actors and different mechanisms of deprivation.

The allegations after Thomas's recusal are also materially different from the initial heirship litigation.

The alleged conduct evolved from the original judicial proceedings into:

1. estate administration;
2. control over insurance and property proceeds;
3. alleged coordination with the administratrix;
4. alleged coordination with Judge Hodges;
5. alleged manipulation of Plaintiff's homestead and tax classification;
6. alleged designation of the property as vacant or abandoned; and
7. the eventual forced sale of the property.

The Complaint alleges that these acts were connected by the same objective: depriving Plaintiff of his rights in his marital home and placing the property or its economic value in the hands of the persons Thomas allegedly favored. That factual theory cannot be rejected on a motion to dismiss simply by selecting an earlier event and declaring the conspiracy complete.

D. Thomas's limitations argument improperly asks the Court to resolve disputed questions of Plaintiff's knowledge.

Accrual of a §1983 claim is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Generally, a claim accrues when the plaintiff has possession of the critical facts concerning the injury and its cause. *Jenkins v. Tahmahkera*, 151 F.4th 739, 747–49 & n.11 (5th Cir. 2025).

But Defendant's theory assumes that Plaintiff possessed the critical facts concerning the entire alleged conspiracy in 2021 or February 2022. The Complaint does not establish that as a matter of law.

Plaintiff alleges that material aspects of Thomas's relationships, communications, coordination, and later conduct were concealed from him or became apparent only over time. Indeed, the Complaint alleges that Thomas continued communicating and coordinating outside Plaintiff's presence.

The question of what Plaintiff knew, when he knew it, and when he reasonably could have discovered the later alleged conduct cannot be resolved in Thomas's favor merely by asserting that Plaintiff knew Thomas had recused himself.

The Fifth Circuit's recent decision in *Jenkins* does not require dismissal here. Jenkins confirms that accrual is tied to possession of the critical facts concerning the injury and its causal connection to the defendant. The present Complaint affirmatively alleges later conduct by Thomas and alleges facts from which the Court can reasonably infer that Plaintiff did not possess all of the critical facts concerning the alleged continuing coordination at the time Thomas identifies.

E. The 2023 allegation independently defeats Thomas's attempt to establish a facial limitations bar.

The Complaint's 2023 allegation is especially important. Thomas allegedly participated in 2023 with the Assessor, Collector, and Clerk in conduct designed to deprive Plaintiff of homestead protection and facilitate the sale of his property. That alleged conduct occurred within three years of this action.

Consequently, even if the Court were to conclude that some earlier claims accrued years before the filing of this action, the Complaint does not establish that every claim against Thomas is time-barred.

At minimum, the Court would have to determine which claims arise from which alleged acts and whether the 2023 conduct constitutes a timely independent constitutional violation, an overt act in furtherance of the alleged conspiracy, or both.

Those determinations are not properly resolved against Plaintiff on the face of this Complaint.

F. Plaintiff's conspiracy claims must be considered in light of the later alleged overt acts.

Thomas relies heavily on the age of the alleged conspiracy. But the Complaint does not allege merely the formation of an agreement years ago. It alleges continued acts in furtherance of that alleged agreement.

Plaintiff recognizes that under Fifth Circuit law a §1985 claim cannot be saved merely by asserting that a conspiracy continued in the abstract. See Beckwith v. City of Houston, 790 F. App'x 652, 660-61 (5th Cir. 2019) (citing Helton v. Clements, 832 F.2d 332, 335 (5th Cir. 1987)).

That principle actually underscores why Paragraph 308 matters.

The Complaint alleges an identifiable later overt act by Thomas in 2023—not merely an abstract continuation of the conspiracy.

Thus, the issue is not whether the "mere continuation" of a conspiracy tolls limitations. The issue is whether the alleged 2023 conduct was an overt act in furtherance of the pleaded conspiracy and caused additional injury. The Complaint says that it was. That allegation must be accepted as true at the pleading stage.

## V. JUDICIAL IMMUNITY IS FUNCTIONAL AND MUST BE APPLIED TO THE ACT ALLEGED, NOT MERELY TO THE TITLE OF THE ACTOR

### A. The Supreme Court requires a functional inquiry.

Thomas correctly cites the general rule that judges are entitled to absolute immunity for judicial acts. But that rule does not resolve this case.

The Supreme Court has repeatedly held that judicial immunity is functional. In *Forrester v. White*, the Supreme Court explained that immunity depends upon the "nature of the function performed" rather than simply the identity of the actor. 484 U.S. at 229.

Similarly, *Mireles v. Waco* identifies two circumstances in which judicial immunity does not apply: when the challenged conduct is nonjudicial in nature or when the challenged action is taken in the complete absence of all jurisdiction. 502 U.S. 9, 11-12 (1991).

The relevant question therefore is not simply: "Was Thomas a judge when this occurred?” The relevant question is: "What function was Thomas performing when he allegedly engaged in the challenged conduct?” That distinction is dispositive of much of Defendant's Motion.

B. *Jones v. King* confirms that the analysis is functional and act-specific.

Thomas relies upon *Jones v. King*, 148 F.4th 296 (5th Cir. 2025). *Jones* does not establish the blanket immunity Thomas seeks.

Jones confirms that courts examine the nature of the particular act, including whether it is a function normally performed by a judge and whether the circumstances bear the characteristics of judicial decision-making.

The Fifth Circuit has also emphasized that a conspiracy claim cannot survive merely by repackaging an immune judicial act as a conspiracy. Id. at 300-01. Plaintiff accepts that proposition. But it cuts both ways. The Court must first identify the underlying conduct.

If Thomas entered a routine order adjudicating a matter properly before him, Plaintiff does not contend that the order becomes nonjudicial merely because Plaintiff alleges Thomas acted improperly.

But if Thomas privately advised interested parties, coordinated litigation strategy, acted as an advocate for one side, participated in private arrangements concerning Plaintiff's claims, or coordinated with administrative officials concerning Plaintiff's tax status, those allegations require a different functional analysis.

A judicial title does not transform every private or administrative act into adjudication.

C. Plaintiff does not rely upon bad faith or motive alone to defeat judicial immunity.

To avoid confusion, Plaintiff does not argue that Thomas loses immunity merely because Plaintiff alleges bad faith, racial animus, corruption, conspiracy, or an improper motive. Those allegations alone would not defeat immunity. Nor does Plaintiff argue that every adverse ruling entered by Thomas was nonjudicial.

Instead, Plaintiff identifies alleged conduct that, if true, involved functions other than adjudication. That is the distinction recognized in *Forrester*, *Mireles*, and the Fifth Circuit's functional-immunity cases.

## VI. THE COMPLAINT PLAUSIBLY ALLEGES CONDUCT OUTSIDE THE PROTECTED ADJUDICATIVE FUNCTION

A. The alleged private advice and coordination with persons having interests before Thomas are not converted into judicial acts merely because Thomas later presided over litigation.

The Complaint alleges that Thomas had represented Althela and Keiona before becoming a judge and maintained personal relationships with them. It further alleges that after Althela's death, Thomas communicated with members of her family concerning their desire to obtain the marital residence and provided guidance concerning legal strategy. Plaintiff does not contend that prior representation itself is actionable.

Rather, the allegations provide the factual context for the later claim that Thomas continued acting in the interests of persons with whom he had a prior attorney-client and personal relationship while exercising judicial authority over Plaintiff's claims. The alleged private advisory conduct is functionally different from ruling on a motion.

B. The alleged private arrangement concerning Plaintiff's claims is distinct from the entry of an order.

The Complaint alleges that Thomas participated in an arrangement concerning the disposition of Plaintiff's claims and communicated that arrangement to persons adverse to Plaintiff. The later entry of an order may have been judicial. But the alleged private negotiation, direction, or advocacy that preceded the order is not necessarily transformed into a judicial act merely because an order ultimately resulted.

That is precisely why functional analysis is required.

C. The alleged insurance and estate coordination is not conclusively protected merely because it occurred in a chancery proceeding.

The Complaint alleges that Thomas participated in the handling of insurance proceeds, estate assets, attorney payments, administration of the estate, and related property matters. Thomas may ultimately establish that particular actions were judicial. But the Court cannot assume at the pleading stage that every communication, private arrangement, instruction, coordination, or financial transaction alleged in the Complaint was an exercise of adjudicative judgment. The Complaint alleges otherwise.

Those factual allegations must be accepted as true for purposes of Rule 12(b)(6).

D. The alleged 2023 tax-related conduct is particularly significant because it is pleaded as conduct involving administrative officials.

Paragraph 308 alleges that Thomas "colluded in 2023" with the Assessor, Collector, and Clerk to characterize Plaintiff's property as vacant or abandoned, deny homestead protection, and facilitate a sale. That allegation cannot be dismissed merely by pointing to Thomas's former judicial position.

The alleged conduct involved county tax-administration officials and the classification and treatment of property for taxation and homestead purposes. It therefore presents a fundamentally different functional question from whether Thomas properly adjudicated a motion pending before him. At a minimum, the

allegation creates a factual issue concerning the nature of Thomas's alleged participation.

## VII. THOMAS CANNOT USE JUDICIAL IMMUNITY TO ERASE THE POST-RECUSAL ALLEGATIONS

Thomas's Motion effectively treats his November 2021 recusal as both the end of his involvement and proof that all later conduct was attributable only to other actors. The Complaint does not say that. It alleges that Thomas remained connected to the interests of his former clients. It alleges that the administratrix continued to communicate and coordinate with Thomas. It alleges that Judge Hodges subsequently took control of the estate matter and operated against Plaintiff in Thomas's and his alleged clients' interests. It alleges that Thomas participated in the 2023 tax-related conduct. And it alleges that the conspiracy culminated in the forced sale of Plaintiff's homestead.

The Court must take those allegations as true at this stage. Thomas cannot obtain dismissal by replacing those allegations with the factual proposition that he had no involvement after recusal. That is a factual defense, not a Rule 12(b)(6) concession.

## VIII. THE ELEVENTH AMENDMENT DOES NOT REQUIRE DISMISSAL OF THE ENTIRE ACTION

Thomas also invokes the Eleventh Amendment. Plaintiff does not dispute the narrow proposition that retrospective monetary damages against a state official

sued solely in his official capacity generally are barred by the Eleventh Amendment. But that proposition does not require dismissal of the entire action.

First, Plaintiff asserts claims against Thomas in his individual capacity. Individual-capacity claims are not barred merely because the defendant also holds state office. See Hafer v. Melo, 502 U.S. 21, 30-31 (1991).

Second, prospective relief is analytically distinct from retrospective damages. See Ex parte Young, 209 U.S. 123 (1908). Plaintiff recognizes that §1983 contains additional limitations on injunctive relief against judicial officers and that those limitations must be applied to whatever prospective relief remains legally available. Accordingly, the proper disposition is not dismissal of the entire case.

At most, the Court should dismiss any barred request for retrospective monetary relief against Thomas in his official capacity while permitting the individual-capacity claims and any legally permissible declaratory or prospective relief to proceed.

## IX. THOMAS'S CONSPIRACY ARGUMENT FAILS BECAUSE THE COMPLAINT ALLEGES INDEPENDENT CONDUCT OUTSIDE THE IMMUNE JUDICIAL ACTS

Thomas correctly points out that a conspiracy claim cannot survive merely by labeling an immune judicial act a conspiracy. But Plaintiff does not rely upon that theory. The Complaint alleges independent conduct, including:

1. private communications with persons having interests adverse to Plaintiff;

2. alleged advice concerning litigation strategy;
3. alleged coordination with attorneys;
4. alleged private arrangements concerning Plaintiff's claims;
5. alleged coordination concerning insurance and estate assets;
6. alleged coordination with the administratrix;
7. alleged post-recusal coordination involving Judge Hodges;
8. alleged coordination with the Assessor, Collector, and Clerk in 2023; and
9. a continuing course of conduct directed toward depriving Plaintiff of his homestead and property interests.

These allegations provide predicates separate from the mere issuance of judicial orders. *Jones* therefore does not compel dismissal. Rather, *Jones* reinforces the necessity of identifying which alleged conduct was judicial and which was not. The Complaint does that.

## X. THE COMPLAINT DOES NOT ASK THIS COURT TO SIT AS AN APPELLATE COURT OVER THE STATE CHANCERY COURT

Thomas's Motion repeatedly characterizes Plaintiff's claims as dissatisfaction with state-court rulings. That characterization is incorrect. Plaintiff expressly alleged that the action is not simply an appeal from adverse judicial decisions. Compl. ¶ 39.

The constitutional claims arise from alleged conduct surrounding and outside the adjudicative process, including alleged coordination, conflicts, private

communications, interference with access to judicial relief, administrative conduct, and a broader conspiracy involving public and private actors.

The distinction between an appeal from an erroneous judgment and an independent constitutional action based upon unconstitutional conduct is fundamental.

Plaintiff does not ask this Court to determine that the state court reached the wrong result on the merits of a particular state-law dispute.

Plaintiff alleges that constitutional rights were violated through a coordinated course of conduct involving state actors and private participants.

The Court should therefore evaluate the pleaded constitutional claims under the applicable federal standards rather than reducing them to an appeal from state-court rulings.

## XI. THE 2025 FORCED SALE IS RELEVANT AS THE CULMINATION OF THE PLEADED COURSE OF CONDUCT, NOT AS A CLAIM THAT THOMAS HIMSELF ENTERED THE SALE ORDER

Plaintiff recognizes an important distinction.

Thomas recused himself in 2021.

The Complaint does not allege that Thomas personally entered the 2025 order forcing the sale of Plaintiff's homestead.

Plaintiff does not need to make that allegation.

The Complaint alleges that the defendants participated in a connected course of conduct directed toward the same objective and that Thomas remained a participant in that course after his recusal.

Paragraph 38 expressly alleges that the conspiracy continued through the forced sale.

Paragraphs 297-308 identify later acts and coordination involving Thomas, the administratrix, Judge Hodges, and other officials.

The 2025 sale is therefore relevant as the culmination and latest consequence of the pleaded course of conduct—not as an allegation that Thomas personally sat on the bench and entered the sale order after his recusal.

That distinction should defeat any attempt to transform this case into a challenge to a single judicial decision.

## XII. THE COMPLAINT STATES PLAUSIBLE CLAIMS DESPITE THOMAS'S ATTEMPT TO RECHARACTERIZE THE FACTS

At the pleading stage, Plaintiff need not prove the conspiracy.

He must plead enough facts to make the asserted claims plausible.

The Complaint does more than merely allege that Thomas issued rulings Plaintiff disliked.

It alleges:

• a preexisting attorney-client relationship between Thomas and persons with direct interests in Plaintiff's property;

• continued personal relationships after Thomas became a judge;

• alleged private communications concerning Plaintiff's property;

• alleged advice and direction concerning litigation strategy;

• alleged interference with Plaintiff's ability to obtain hearings and rulings;

• alleged private coordination concerning Plaintiff's claims;

• alleged coordination involving insurance and estate assets;

• alleged conduct continuing after Thomas's recusal;

• alleged coordination involving Judge Hodges and Thomas's alleged former clients;

• alleged 2023 coordination with tax officials concerning Plaintiff's homestead; and

• a continuing conspiracy culminating in the forced sale of Plaintiff's home.

Those allegations are sufficient to require the Court to consider the claims under the normal Rule 12(b)(6) standard.

Whether Plaintiff ultimately can prove each allegation is a question for discovery and, if appropriate, summary judgment or trial.

## XIII. ALTERNATIVELY, THE COURT SHOULD PERMIT AMENDMENT

If the Court concludes that any particular claim has not been pleaded with sufficient specificity, dismissal with prejudice would nevertheless be inappropriate.

Plaintiff should be afforded an opportunity to amend pursuant to Federal Rule of Civil Procedure 15(a)(2).

This is especially appropriate where the Court identifies a need for greater specificity concerning:

1. particular post-recusal communications;
2. the identity of participants in the alleged coordination;
3. specific 2022-2023 acts;
4. the relationship between the alleged Thomas-Hodges coordination and the 2023 tax-related conduct;
5. the particular constitutional injury caused by each alleged act; and
6. the specific acts that Plaintiff contends constitute overt acts in furtherance of the alleged conspiracy.

An opportunity to amend would permit the claims to be tested on a fuller factual record rather than dismissed based upon Defendant's characterization of disputed allegations.

## XIV. CONCLUSION

Defendant Thomas's Motion depends upon two propositions that cannot be accepted at the pleading stage: first, that Thomas's involvement ended when he recused himself in November 2021; and second, that every act alleged in the Complaint was judicial merely because Thomas was a judge at some point during the relevant period. The Complaint alleges otherwise.

It alleges that Thomas participated in a coordinated course of conduct extending beyond ordinary adjudication and continuing after his recusal. It

specifically alleges post-recusal conduct involving Thomas, including alleged coordination concerning Plaintiff's property and a 2023 allegation that Thomas colluded with the Assessor, Collector, and Clerk to undermine Plaintiff's homestead protection and facilitate the sale of his property. Compl. ¶¶ 297-308.

The Complaint further alleges that the conspiracy continued through the eventual forced sale of Plaintiff's homestead. Compl. ¶ 38.

These allegations prevent the Court from concluding on the face of the Complaint that all claims accrued in 2021 or February 2022.

Likewise, the judicial-immunity defense cannot be resolved by treating every alleged act as a judicial ruling. The Supreme Court and Fifth Circuit require a functional inquiry. Plaintiff alleges conduct that, if true, included functions outside adjudication.

At this stage, the Court must accept those allegations as true and draw reasonable inferences in Plaintiff's favor.

Accordingly, Plaintiff respectfully requests that Defendant J. Dewayne Thomas's Motion to Dismiss be DENIED.

In the alternative, should the Court conclude that any claim requires greater factual specificity, Plaintiff respectfully requests leave to amend before dismissal with prejudice.

This 14th day of September, 2026.

Respectfully submitted,

**DANNY TOWNSEND, PLAINTIFF**

BY: /s/ Ishmael Muhammad
ISHMAEL MUHAMMAD MSB#99213
ATTORNEY FOR PLAINTIFF

**OF COUNSEL:**

______________________________

Ishmael Muhammad, Esq.
MUHAMMAD & ASSOCIATES, LLC
210 Lexington Avenue
Jackson, MS 39203
T: (404) 599-0130
armsllc@representative.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2026, I caused the foregoing Memo to be filed using the CM/ECF system which would then electronically notify all the necessary participants and parties of record in this case and caused service to be made to the following individual as indicated:

Mary Arnold
5056 Tulane Drive
Jackson, MS 39209
VIA US MAIL

/s/ Ishmael Muhammad____________
ATTORNEY FOR PLAINTIFF